LARZELERE v. CONLIN.

EXCHANGE OF PROPERTY — RESCISSION — FRAUD — EVIDENCE—SUF-
FICIENCY.
    In a suit for the rescission of a contract for an exchange
    of property on the ground of fraud, evidence *held*, suf-
    ficient to sustain the finding of the court below that fraud
    was established.[1]

Appeal from Lenawee; Hart (Burton L.), J.   Sub-
mitted January 21, 1926.   (Docket No. 52.)    De-
cided March 20, 1926.

Bill by Charles R. Larzelere and another against
John Conlin and another for the rescission of an ex-
change of real estate on the ground of fraud.   From
a decree for plaintiffs, defendants appeal.   Affirmed,
conditionally.

*Baldwin & Alexander,* for plaintiffs.

*J. N. Sampson* and *Franklin J. Russell,* for defend-
ants.

WIEST, J.   This is a suit to rescind an exchange of
properties on the ground of fraudulent representations
claimed to have been made by a son of defendants who
managed the deal for them.   But one alleged mis-
representation need be considered, for, if established,
it calls for rescission.   Plaintiffs had an equity in a
home in the city of Detroit, accepted in the exchange
at a value of $6,707.   Defendants owned a store
building, cottage, and barn, on a large lot in Tipton,
Lenawee county.   Gerald Conlin, son of defendants,
in business in Detroit, placed an attractive advertise-

[1]Exchange of Property, 23 C. J. § 95.
234—Mich.—22.

ment of the property in a Detroit newspaper and this brought plaintiffs to see him.    An exchange of the properties was effected, plaintiffs turning over their equity in their home and taking the Tipton property at a value of $12,500.    Plaintiffs also borrowed $1,000 of defendants and this was added to the contract for the Tipton property.

Plaintiffs claim Gerald Conlin represented there was an offer of $6,000 by the Moreland Brothers Company, for 50 feet square at the corner of the property, and this was a principal inducement as it would permit them to move the store building to another part of the lot and nearly put them out of debt.

Gerald Conlin denied making such representation and testified:

"I stated it had not been on the market for sale except when Moreland Brothers Company had taken an option with my father for $6,000 for this property. * * * I stated Moreland Bros. did not take this option, continue this option, they had paid $25 on it and then let it go. * * * I at no time made any representation to anybody that there was a $6,000 standing offer on this property at Tipton. * * * The first time Mr. and Mrs. Larzelere came to the store I told them about the Moreland option.    I did not tell them that they had offered $6,000, or an option of $6,000 on the 50-foot corner.    The first I ever saw of the 50-foot corner was the day I looked at the allegations in this bill.    I never saw the option until after this bill was filed.    I did not know what was in the option.    I told them that my father had made this option, and that Ogden was considering  his business was so bad, and he talked with my father. When Morelands came along they made this option with my father.    That it did not represent its value, but represented my father's idea of the value of this business. * * * It is not a fact that I told Mr. and Mrs. Larzelere that Moreland Brothers Company had offered $6,000 for 50 feet square out of the corner of that property."

Plaintiff Charles R. Larzelere testified that Gerald Conlin said:

" 'We have a standing offer from the Moreland Oil Company. They will move the building, and pay $6,000 for a 50-foot corner, and put in a gas station.' * * * He never mentioned an option. Every time he spoke of the oil proposition it was always a standing offer. He did not say they had an option on it. He did not say whether it was oral or in writing, and that he never had seen it. If he had told me there was an option on the place and it had expired I would not have been interested in it."

Joseph E. Larzelere, son of plaintiffs, testified:

"Gerald explained there was a $6,000 standing offer on the 50-foot corner by the Moreland Oil Company, and I said that looked pretty good, because of the fact they could sell that corner and pay off their indebtedness, and still have room enough to move the building over and do business. I asked Gerald Conlin why his father did not take it if they had such a good offer, and he said his father was old and did not care to sell the property off piecemeal."

Plaintiff Birdie C. Larzelere testified:

"He (Gerald) told me there was a $6,000 standing offer on that property and remove the building. I made the remark, 'That is not so bad, that would pay our debt to Mr. Conlin, your father, and we would have the property clear.' I did not know about the expense of moving the building. He said he could not just tell, but he supposed they could move it for $1,000. * * * He said the Moreland people had made this offer and they were a very reliable company. He said the property they were going to buy was 50x50. There was nothing said at that time about the Moreland Company having an option on the 50x50."

Gladstone C. Conlin testified to a conversation with plaintiffs, saying:

"My brother spoke of this option, at the time he was talking about this option I interrupted him, I said

'This is a verbal option.' He said, 'I don't know, it may be a verbal option.' I don't know whether it is written or verbal, but I had always understood it was a verbal option. * * * At no time was the word 'Standing offer' ever used. This option was explained as having expired. The word was used that the option was finished or through."

Mr. Ralph C. Bowers, who was present with Mr. Gerald Conlin at one conversation with Mr. Larzelere, testified:

"In the presence of Mr. Larzelere Mr. Conlin stated that Moreland Bros. had an option on the property and that it had expired. * * * I am sure Gerald stated to Mr. Larzelere that Moreland Bros. Company had an option, but that it had expired. Mr. Larzelere just mentioned about the option. They both talked it over. The amount of the option was not mentioned."

September 27, 1923, about a year before this deal, an option, running until November 1, 1923, was given the Moreland Brothers Company covering the whole property at the price of $6,000. This option was not accepted.

The trial judge found the representation, with reference to an offer by the Moreland Company, was made, in substance, as claimed by plaintiffs. We are also so persuaded by the evidence and cannot get away from the thought of how senseless it would have been, under the circumstances, to inform plaintiffs that the property they were buying at $12,500 had been offered for sale on option at $6,000 and rejected.

The decree in the circuit required plaintiffs to pay into court the $1,000 loaned to them, also the amount paid by defendants for taxes on the Detroit property, payments of principal and interest on the contract with the owner for that property, with interest thereon at the rate of five per cent. from the time such payments were made and also file with the clerk of the court a release of their interest in the contract for

the Tipton property; that thereupon the defendants should file with the clerk of the court a transfer to plaintiffs of the contract for the Detroit property.

The decree in the circuit is affirmed, with costs to plaintiffs, if plaintiffs comply with the terms thereof within 30 days. If plaintiffs fail in such performance then their bill is to stand dismissed, with costs to defendants.

SHARPE, STEERE, FELLOWS, CLARK, and MCDONALD, JJ., concurred. BIRD, C. J., and SNOW, J., did not sit.